FREEMAN v WOZNIAK

Docket No. 203737. Submitted December 14, 1999, at Detroit. Decided July 11, 2000, at 9:00 A.M.

Olga Freeman, a legally incapacitated person, by her conservator, brought an action in the Wayne Circuit Court against John Wozniak and Agnes Rzeppa, asking the court to exercise its equitable powers and set aside a mortgage foreclosure by advertisement and cancel a sheriff's deed of mortgage sale. After a trial on a record consisting of stipulated facts and the testimony of the plaintiff's physician, the court, Pamela R. Harwood, J., entered a judgment granting the relief sought by the plaintiff upon finding that the plaintiff lacked actual notice of the foreclosure proceeding because she was affected with dementia at the time she defaulted on the mortgage. Wozniak appealed.

The Court of Appeals *held*:

The defendants complied with the notice requirements of the statute that governs foreclosure by advertisement, MCL 600.3201 *et seq.*; MSA 27A.3201 *et seq.* Absent fraud, accident, or mistake, there is no room for equitable considerations when statutory obligations have been fulfilled. Because there was no showing of fraud, accident, or mistake, the trial court erred in setting aside the foreclosure sale.

Reversed.

MORTGAGES — FORECLOSURES BY ADVERTISEMENT — NOTICES TO MORTGAGORS.

Notice of foreclosure by advertisement is subject to statutory requirements; where those requirements are met, a court may not set aside a foreclosure as a matter of equity absent fraud, accident, or mistake (MCL 600.3201 *et seq.*; MSA 27A.3201 *et seq.*).

*Stephen J. Remski*, for the plaintiff.

*Jerald R. Lovell*, for the defendant.

Before: CAVANAGH, P.J., and HOLBROOK, JR., and KELLY, JJ.

PER CURIAM. Defendant appeals as of right from a judgment of the circuit court setting aside a mortgage foreclosure sale and canceling a sheriff's deed of mortgage sale. We reverse.

Plaintiff was the fee simple owner of a residential home located in Detroit. In July 1991, plaintiff executed and delivered a mortgage to Sterling Mortgage and Investment Company (hereinafter Sterling) on the residence as security for a $7,100 promissory note also executed in favor of Sterling. Sterling then conveyed and assigned all its rights and interests in these two documents to defendant and Agnes Rzeppa.[1]

Plaintiff ceased making payments on the promissory note in February 1994. On June 23, 1994, defendants sent a letter to plaintiff informing her that she was four months in arrears and owed a total of $553.32.[2] The letter also stated that plaintiff needed to send the total due "immediately to avoid foreclosure proceedings." That amount was never tendered. On August 8, 1994, defendants began foreclosure proceedings by advertisement. Notice of foreclosure was published for five successive weeks in the *Detroit Legal News*.[3] Notice was also posted on the front door of plaintiff's residence on August 20, 1994. The mortgage foreclosure sale took place on September 16, 1994, at which time defendant and Rzeppa purchased the property for $6,543.38. Plaintiff did not redeem the property during the subsequent six months. Thereafter, the sheriff's deed was executed

---

[1] Rzeppa died in February 1996.

[2] The amount included $509.68 in late mortgage payments and $43.64 in delinquent charges.

[3] The notice was published on August 12, 19, 26, and September 2, 9, 1994.

and recorded, thereby conveying plaintiff's interest in the property to defendant and Rzeppa.

On April 17, 1995, defendant and Rzeppa received a judgment for possession of the property from the district court. Plaintiff's motion to set aside that judgment was denied, and a writ of eviction was then issued. Thereafter, plaintiff's daughter, Maria Freeman, was appointed plaintiff's temporary guardian by the Wayne County Probate Court. On plaintiff's motion for rehearing, the district court set aside the judgment of possession and vacated the writ of eviction.

Plaintiff then filed in the circuit court a complaint to set aside the foreclosure. The circuit court, on September 15, 1995, denied defendant's and Rzeppa's motion for summary disposition. Additionally, the circuit court issued an order mandating that plaintiff pay to defendant and Rzeppa $450 a month beginning in November 1995, as well as a one-time payment of $750 that was due on or before November 10, 1995. Plaintiff was also required to obtain fire and liability insurance. In their November 27, 1995, motion to dismiss plaintiff's complaint, defendant and Rzeppa alleged that none of the payments had been made, nor had the insurance been obtained. When plaintiff failed to respond to this motion, the circuit court granted summary disposition to defendant and Rzeppa for failure to comply with the earlier order. On plaintiff's motion for reconsideration, the circuit court set aside the dismissal and reinstated the case for trial

The case was then submitted to the circuit court on a set of stipulated facts and the deposition testimony of Sara Gelberd, M.D. Dr. Gelberd first saw plaintiff

on February 21, 1994. Dr. Gelberd concluded from her meeting with plaintiff that she was suffering from "[d]ecreased memory loss with dementia." Dr. Gelberd noted that her subsequent examinations of plaintiff indicated that the dementia was worsening.[4] Dr. Gelberd recommended to plaintiff's family at the time that plaintiff be placed in a senior center during the day where she could receive greater supervision. There is no indication that such an action was ever taken by the family. On March 30, 1994, Dr. Gelberd recommended that plaintiff be placed in an even "more supervised setting." This recommendation was rejected.

The circuit court found that at the time plaintiff defaulted on her mortgage, she was incompetent as a result of dementia. Thus, although the statutory notice requirements had been satisfied, the trial court determined that the notice "did not serve its purpose in light of plaintiff's incompetency." Relying on its equitable powers, the court set aside the foreclosure sale.

Defendant argues on appeal that there was no legal basis for the court's setting aside the foreclosure sale. While stipulating the fact that plaintiff was incompetent during the foreclosure proceedings, defendant asserts that plaintiff is without a remedy because she has not alleged fraud, accident, or mistake. We agree. The issue whether a mortgage foreclosure may be set aside because of the mortgagor's incompetence during the foreclosure proceeding is a question of law that is reviewed de novo on appeal. *Poindexter v*

---

[4] Dr. Gelberd indicated that plaintiff was always accompanied by one of her two daughters.

*Poindexter*, 234 Mich App 316, 319; 594 NW2d 76 (1999).

The parties agree that the foreclosure procedure was proper. Plaintiff concedes that defendant sent her a letter warning that she was behind in her mortgage payments and, in order to avoid foreclosure proceedings, she needed to submit the amount in arrears immediately. When plaintiff failed to do so, defendant commenced foreclosure by advertisement in compliance with MCL 600.3201 *et seq.*; MSA 27A.3201 *et seq.* Plaintiff agrees that the proceedings were technically complied with. However, it is plaintiff's contention, and the trial court agreed, that although the statutory notice requirements were met, plaintiff was still without actual notice of the proceedings against her because of her incapacity.

In *Senters v Ottawa Savings Bank*, 443 Mich 45; 503 NW2d 639 (1993), the Michigan Supreme Court held, "[w]here, as in the present case, a statute is applicable to the circumstances and dictates the requirements for relief by one party, equity will not interfere." *Id.* at 56. In that case, because the statute pertaining to redemption clearly specified the requirements that the plaintiff had to fulfill in order to redeem her property, there was "no room for equitable considerations absent fraud, accident, or mistake." *Id.* at 55. Thus, the *Senters* Court concluded that in the absence of fraud, accident, or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements. *Id.* at 57.

Plaintiff cannot argue that there was fraud, accident, or mistake because plaintiff readily conceded that the foreclosure procedure was technically proper. Furthermore, there is no evidence that plain-

tiff was incompetent when she executed the promissory note and mortgage in 1991. Instead, plaintiff argued in the lower court that, as a matter of equity, it would be unfair to allow the foreclosure sale to stand considering that plaintiff was incompetent at the time of the sale and could not have received actual notice. While we sympathize with plaintiff's situation, we conclude this argument is insufficient to overcome the holding in *Senters* that, when there is a statutory obligation that has been fulfilled, there is simply "no room for equitable considerations absent fraud, accident, or mistake." *Id.* at 55. Plaintiff is unable to show how her failure to receive notice was the result of defendant's actions, or that defendant failed to comply with the requirements of the statute. Therefore, absent a showing that there has been a fraud, accident, or mistake, we conclude that the trial court erred in setting aside the foreclosure sale.

Reversed.