NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0133n.06

No. 12-2123

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 18, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HILLS HOWARD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHASE HOME FINANCE, LLC, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: KEITH, GUY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Chase Home Finance, LLC (Chase) foreclosed on Hills Howard's home in Detroit, Michigan, in 2010. Howard filed a civil action against Chase to contest the foreclosure under a variety of statutory and common-law theories. He claims that Chase wrongfully foreclosed because it was not the servicer of his loan and because Chase wrongfully caused him to default by failing to accept his attempts to cure a tax arrearage. The district court granted Chase's motion for summary judgment. We affirm.

**I.**

**A.**

This home mortgage foreclosure case concerns real property located at 1731 Campau Farms Circle, Detroit, Michigan. Howard obtained a loan in the amount of $87,000 from First Chicago Mortgage Company to purchase the property. In connection with the loan, Howard signed a promissory note, which was secured by a mortgage on the property.

The mortgage provided that Howard "shall pay all taxes, assessments, charges, fines and impositions attributable to the property . . . . If [Howard] makes these payments directly, [Howard] shall promptly furnish to Lender receipts evidencing the payments." The mortgage further provided that if property taxes were not current on the property, the lender would pay the delinquent tax amount and establish an escrow fund to pay future taxes on Howard's behalf.

Chase became the servicer of the loan on October 4, 2004. In 2008, the Detroit City Treasurer notified Chase of delinquent property taxes at Howard's home for tax year 2002. Chase paid the outstanding tax amount and, pursuant to the terms of the mortgage, established an escrow account on the loan. As a result, the City of Detroit sent the 2008 tax bill directly to Chase and Chase paid the bill on Howard's behalf. Howard disputed that taxes for 2002 were owed, and Chase requested proof that Howard had paid the 2002 taxes. Howard has not demonstrated that he provided Chase proof of payment.

In an acceleration warning dated January 4, 2009, Chase informed Howard that he was in default under the terms of the promissory note in the amount of $4,612.02 for principal, interest, escrow, late charges, and fees. The letter provided that if Howard paid the amount within thirty-two days from the date of the notice, he could cure the default. Howard responded by returning the acceleration warning with a handwritten note which read:

> Please find enclosed a check of $4,876.27 to re-imbu[r]se Chase for the 2008 City of Detroit and Wayne County taxes. Chase directed the tax bill to its mortgage department without notice to me . . . I would like to request a face-to-face meeting with a member of Chase's dispute resolution department. I hope the request is not ignore[d] as most of my previous requests have been ignored!! I have not missed a loan payment!

Howard claims the check was refused. However, the record indicates that Chase did not accelerate the maturity of the loan as a result.

2

In May 2010, Howard received a letter from Chase detailing the history of his escrow account. According to that accounting, the 2002 tax payment was for $2,673.02, which Chase remitted to the City of Detroit. As a result, Chase performed a series of escrow analyses on the loan which increased Howard's monthly mortgage payments. As of the date of the letter, Chase determined the February 2010 monthly mortgage payment of $929.06 was due and that there was a negative balance in the escrow account of $5,573.55.

On July 15, 2010, the mortgage was assigned to Chase. At some point following the May 2010 letter, Howard defaulted on his loan.[1] Chase initiated foreclosure-by-advertisement proceedings and first published notice of foreclosure on July 21, 2010. Howard claims that in a check dated August 27, 2010, he attempted to pay Chase $8,974.78 in order to prevent foreclosure but that Chase refused to accept the check. Chase purchased the property at a sheriff's sale on September 29, 2010. The redemption period expired September 29, 2011. Howard did not attempt to redeem the property during this period.

**B.**

Howard filed suit in the Wayne County Circuit Court on January 14, 2011. The complaint contained counts of misrepresentation, wrongful foreclosure, slander of title, quiet title, and exemplary damages. Howard's prayer for relief asked the state circuit court to "[s]tay all proceedings for possession of property," "[s]et aside [the] sheriff's sale," and "[d]eclare [the] mortgage foreclosure void." Chase timely removed on the basis of diversity and supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367(a). Following discovery, Chase moved for summary judgment. The district court awarded summary judgment to Chase on all counts on August 2, 2012.

---

[1] Howard claimed that he never missed a payment, but he only provided payment history through January 2009.

3

## II.

We review a grant of summary judgment *de novo. Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 544 (6th Cir.2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008).

## III.

## A.

Chase disputes whether Howard had standing to challenge the foreclosure once Howard failed to redeem the property. This is an issue that arises frequently in Michigan foreclosure cases invoking our diversity jurisdiction. *See, e.g.*, *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 nn. 3,4 (6th Cir. 2013) (collecting cases); *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 428 (6th Cir. 2013).

"[A] plaintiff must have standing under both Article III and state law in order to maintain a cause of action" when invoking diversity jurisdiction in federal court. *Morell v. Star Taxi*, 343 F. App'x 54, 57 (6th Cir. 2009). The dispute is whether Howard has standing under Michigan law.

A litigant has standing under Michigan law "whenever there is a legal cause of action." *Lansing Sch. Educ. Ass'n v. Lansing Bd. of Educ.*, 792 N.W.2d 686, 699 (Mich. 2010). Howard met this basic requirement. "Michigan courts have long held that a mortgagor may challenge the validity of a statutory foreclosure either through 'summary proceedings' in the Michigan courts pursuant to Mich. Comp. Laws § 600.5714, or by filing a separate lawsuit, as [Howard] did here." *El-Seblani,*

510 F. App'x at 428 (citing *Mfrs. Hanover Mortg. Corp. v. Snell*, 370 N.W.2d 401, 404 (Mich Ct. App. 1985)). Howard therefore has a "cause of action" under state law. *See id.*

Chase's primary argument is that once the statutory redemption period expires, a court will not set aside a foreclosure sale without a strong showing of fraud or irregularity, which Howard has not made here. Chase cites *Conlin*, 714 F.3d 355, and *Overton v. Mortgage Electronic Registration Systems*, No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009), as support for its position. *Conlin* did not decide the standing issue, 714 F.3d at 359, and both *Conlin* and *Overton* are best understood as merits decisions*, see El-Seblani*, 510 F. App'x at 429. Because Howard stated a viable cause of action under Michigan law, we hold that the district court did not err in holding that he had standing to challenge the foreclosure sale.

**B.**

Howard argues that the district court erred in granting summary judgment to Chase on his wrongful foreclosure claim. Under Michigan law, once a sheriff's sale has occurred, a mortgagor is stripped of title to, and any right in, the foreclosed property if the mortgagor fails to redeem the property within the redemption period. *See* Mich. Comp. Laws § 600.3236.

As we have stated, "Michigan's foreclosure-by-advertisement scheme was meant to, at once, impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties. To effectuate this interest in finality, the ability for a court to set aside a sheriff's sale has been drastically circumscribed." *Conlin*, 714 F.3d at 359 (internal citations omitted).

To set aside a sheriff's sale once the redemption period has expired, a plaintiff must make two showings. First, a plaintiff must present a "strong case of fraud or irregularity." *Sweet Air Inv., Inc. v. Kenney*, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007) (internal quotation marks omitted). "It is further clear that not just any type of fraud will suffice. Rather, 'the misconduct must relate to the

5

foreclosure procedure itself.'" *Conlin*, 714 F.3d at 360 (quoting *El-Seblani*, 510 F. App'x at 429) (alterations omitted); *see also Freeman v. Wozniak*, 617 N.W.2d 46, 49 (Mich. Ct. App. 2000) ("Plaintiff cannot argue that there was fraud, accident, or mistake because plaintiff readily conceded that the foreclosure procedure was technically proper.").

Second, a plaintiff "must show that they were prejudiced by defendant's failure to comply with [Mich. Comp. Laws §] 600.3204. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich. 2012).

As the statutory redemption period has expired and Howard made no effort to redeem, to prevail on his wrongful foreclosure claim, he must demonstrate fraud or irregularity in the foreclosure proceedings and prejudice.

Howard first asserts that the district court erred in concluding that the tax escrow was properly established because Howard attempted to cure the arrearage. Howard claims that he twice made an effort to pay amounts owed, but the record is not clear as to what occurred. Whether Howard did in fact make an effort to cure the arrearage is immaterial, though, because Howard has not alleged an irregularity in the foreclosure process itself. *See Conlin*, 714 F.3d at 360.[2]

Howard also argues that the district court erred in granting summary judgment because there was a genuine dispute of material fact as to whether Chase was the proper party to initiate foreclosure proceedings.

---

[2]Howard quotes extensively from *Galliard v. USAA Federal Savings Bank*, No. 12-CV-11459, 2012 U.S. Dist. LEXIS 163211 (E.D. Mich. Nov. 15, 2012), in his brief. *Galliard*, however, involved a challenge to the notice component of the foreclosure proceedings.

Michigan's foreclosure-by-advertisement statute requires that "[t]he party foreclosing the mortgage [be] either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." Mich. Comp. Laws § 600.3204(1)(d).

Howard's primary argument is that the affidavit relied on by Chase to establish that it was the servicer of the loan at the time of foreclosure failed to comply with Fed. R. Civ. P. 56(c)(4) because the statements in the affidavit were not based on personal knowledge and because business records referred to in the affidavit were not attached.

We need not address this argument because Howard conceded that Chase was the servicer of his loan in his complaint. Indeed, Howard's complaint acknowledged that he made payments to Chase, communicated with Chase about the servicing of the loan, and even contained a partial account history and acceleration warning letter from Chase. Thus, whether the district court relied on the affidavit is beside the point. There was no genuine dispute of material fact that Chase was the servicer of Howard's loan and therefore the proper party to initiate foreclosure under Mich. Comp. Laws § 600.3204(1).

The district court did not err in awarding summary judgment to Chase on Howard's wrongful foreclosure claim.

## C.

Howard argues that the district court erred in granting Chase summary judgment on his quiet-title claim. The district court dismissed this argument without commenting on the merits because it concluded that Howard failed to produce evidence showing that he paid the delinquent taxes or otherwise showing an irregularity in the foreclosure proceedings.

Howard argues that the district court erred because of the alleged illegality of the foreclosure. This is the same argument Howard makes with respect his wrongful foreclosure claim, and we affirm

7

the district court for the reasons stated above

**D.**

Howard argues that the district court erred in granting Chase summary judgment on his common-law misrepresentation claim. The district court also summarily rejected this argument.

In Michigan:

> [A]ctionable fraud consists of the following elements: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 36 (Mich. Ct. App. 1998).

Howard asserts that Chase represented to Howard that if he cured the arrearage, his loan would not be accelerated. In the acceleration warning, Chase stated that Howard was in default for $4,612.02. Howard offered a check for $4,876.27 to reimburse Chase for the 2008 taxes, which Chase allegedly declined. The burden was on Howard, however, to present facts showing that the loan was accelerated for that reason. Howard has not done so.

The record does not establish that Chase accelerated the loan due to Howard's failure to pay the 2008 taxes.[3] The record indicates that the default that led to foreclosure was from May or June 2010. As of May 2010, Howard's loan was current and due for the February 1, 2010, monthly mortgage payment, and sometime after that Howard defaulted.

Howard also has not established that Chase was under any obligation to accept his August 27, 2010, check, which was tendered after Chase had already initiated foreclosure proceedings.

---

[3] Howard also asserts that Chase misrepresented its interest in the loan when it had none, but this is contradicted by the fact that Howard's complaint admitted that Chase was the servicer of the loan.

8

The district court did not err in awarding summary judgment to Chase on Howard's misrepresentation claim.

**E.**

Howard argues that the district court erred in granting summary judgment to Chase on his slander-of-title claim. The thrust of Howard's argument is that Chase slandered his title by foreclosing on his property. Because Howard has failed to establish that Chase improperly foreclosed, it was not a misrepresentation or slander of Howard's title for Chase to state that it could foreclose.[4]

**IV.**

For the foregoing reasons, the judgment of the district court is affirmed.

---

[4] Howard's complaint also contained a claim for exemplary damages. Exemplary damages are not a separate claim under Michigan law. *El-Seblani*, 510 F. App'x at 431–32. "Because the record presents no basis for imposing such damages, the district court correctly granted summary judgement on this count of the complaint." *Id*. at 432.